USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1273 UNITED STATES, Appellee, v. THOMAS J. BARTELHO, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Selya and Boudin, Circuit Judges, ______________ and McAuliffe,* District Judge. ______________ _____________________ Christopher W. Dilworth, by appointment of the Court, for ________________________ appellant. Margaret D. McGaughey, Assistant United States Attorney, ______________________ with whom Jay P. McCloskey, United States Attorney, and Richard _________________ _______ W. Murphy, Assistant United States Attorney, were on brief for _________ appellee. ____________________ November 25, 1997 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. McAULIFFE, District Judge. Thomas Bartelho was McAULIFFE, District Judge. ________________ convicted of three counts of armed bank robbery (18 U.S.C.A. 2113(a) and (d)), three counts of using a firearm in a crime of violence (18 U.S.C.A. 924(c)), and one count of robbery affecting commerce (18 U.S.C.A. 1951). On appeal, Bartelho raises a number of evidentiary issues and challenges the district judge's denial of his motion to sever the charges against him. For the reasons that follow, we affirm his conviction. I. BACKGROUND1 I. BACKGROUND Four robberies occurred within four months in the same area near the Maine coast. The Fleet Bank in Westbrook was robbed on January 31, 1994, and on March 4 two banks, the Casco Northern Bank in Gray and the Key Bank in Windham, were robbed within twenty minutes of each other. On May 5, a jewelry store in South Portland was robbed. The robberies were similar in that in each, the robbers were masked, brandished guns, and drove stolen cars. They netted approximately $64,000 in cash from the banks and $109,000 worth of diamonds from the jewelry store. The robbers activities, guns, and general appearance were noted by bank employees, customers, and passersby, and were recorded by bank surveillance cameras. On July 2, 1994, the Windham (Maine) police received a call reporting a domestic disturbance in the upstairs apartment  ____________________ 1 Bartelho does not challenge the sufficiency of the evidence. The facts are presented only as background for subsequent discussion of the issues raised on appeal, without favor to either party. United States v. Morla-Trinidad, 100 F.3d 1, 2 ______________ ______________ (1st Cir. 1996). -2- of a two-unit residence. The caller lived downstairs. The upstairs tenants were reported to be Patricia Harris, her boyfriend, "Tommy," and her two young children. The police found a loaded semiautomatic rifle on the porch, and, when they called out for "Tommy," Bartelho emerged from hiding. The rifle was similar to one described by witnesses as having been used by the bank robbers. Bartelho was arrested, on assault charges, and was held in the Cumberland County jail until he made bail.  Agents of the Federal Bureau of Investigation ("FBI") then sought and obtained a warrant to search Harris's apartment for evidence connected to the January and March bank robberies. During their search on July 7, agents found a quantity of ammunition, a stock and case for a rifle, and other evidence related to the bank robberies. The downstairs neighbor gave the agents a .22 caliber revolver and ammunition that she said Harris had given to her. A complaint charging Bartelho with the bank robberies issued on July 8, 1994, but on October 12 it was dismissed without prejudice on the government's motion.2 Bartelho was arrested on other charges in October and imprisoned in Rhode Island. His cellmate told the FBI that Bartelho bragged about his proficiency with guns, as well as his  ____________________ 2 In a separate indictment, Bartelho was charged with being a felon in possession of a firearm. Before trial on that charge, Bartelho moved to suppress evidence taken by the Windham police in the warrantless July 2 search, and by the FBI in the July 7 search. The district judge denied his motion. Bartelho was convicted and on May 26, 1995, he was sentenced to 120 months in prison. His conviction was affirmed on appeal. United States v. _____________ Bartelho, 71 F.3d 436 (1st Cir. 1995). ________ -3- involvement in the robberies. Another inmate who knew Bartelho at the Windham (Maine) Correctional Facility, where Bartelho was imprisoned on gun possession charges, told the FBI that Bartelho had admitted his part in the bank and jewelry store robberies. William Yates, who was in prison with Bartelho at the Kennebec (Maine) County Jail in March of 1995, also reported that Bartelho made statements about his participation in the robberies. And, one of Bartelho's accomplices, Gerald Van Bever, who had been arrested for his part in the robberies, also made statements to the FBI implicating Bartelho. On May 16, 1995, a federal grand jury returned an indictment against Bartelho charging him with three counts of bank robbery in violation of 18 U.S.C.A. 2113, three counts of using firearms during crimes of violence in violation of 18 U.S.C.A. 924, and one count of unlawful obstruction of interstate commerce by robbery in violation of the Hobbs Act, 18 U.S